IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE CO., | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Case No. 2:20-cv-43-GMB ) |
| 3D AIR SERVICES, INC., and CHOATE CONSTRUCTION COMPANY, | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of a United States Magistrate Judge. Before the court is the complaint filed by Plaintiff Pennsylvania National Mutual Casualty Insurance Company ("Penn National") seeking a declaratory judgment regarding its obligations to Defendants 3D Air Services, Inc. ("3D Air") and Choate Construction Company ("Choate") under a Commercial General Liability Policy and a Commercial Umbrella Policy. Doc. 1. In response to the complaint, both Choate and 3D Air filed separate motions to dismiss for lack of jurisdiction. Docs. 15 & 22. Choate's motion is based on its

contention that this court lacks personal jurisdiction,[1] while 3D Air contends that the court lacks subject matter jurisdiction.

Penn National filed a motion for leave to conduct jurisdictional discovery as to the existence of personal jurisdiction over Choate. Doc. 25.  The court issued a briefing schedule and both parties filed briefs in support of their positions. Docs. 29, 32 & 34.  While this motion was pending, Choate filed a motion to strike two briefs filed by Penn National because the briefs exceed the pages allowed by the initial order. Doc. 36.  Penn National's reply brief in support of its motion for jurisdictional discovery is one of the briefs at issue. Doc. 36 at 3.  While it is true that the brief contains more pages than allowed by the order and Penn National did not seek leave of court to file excess pages, as directed by the initial order, the court will deny the motion to strike as it relates to Penn National's reply brief.

Choate also seeks to strike Penn National's response to the motion to dismiss or stay. Doc. 35.  Again, while the brief does contain more pages than allowed and Penn National did not seek leave of court to file excess pages, the motion will be denied as moot as it relates to Penn National's response to Choate's motion to dismiss.  As discussed below, Penn National and Choate both will have another

---

[1] Choate also contends that the lawsuit is premature and the issues of law and fact are not ripe for the court's consideration.  This argument is not relevant to the present issue and will be addressed when the court considers the motion to dismiss.

opportunity to respond to the motion to dismiss. The parties should follow the directives of the initial order regarding page limitations or seek leave of court to exceed those page limitations. The court also expects professional courtesies between the attorneys and does not anticipate the need for further court intervention into such matters.

With all that said, the motion for jurisdictional discovery has been fully briefed and is now ripe for decision. For the reasons that follow, the court concludes that the motion is due to be granted in part and denied in part.

## I. BACKGROUND

This lawsuit concerns insurance coverage for claims alleging defects in the construction of a student apartment complex in Charlotte, North Carolina. Doc. 1-5 at 4. Choate, a Georgia corporation with its principal place of business in Georgia, served as the general contractor for the complex. Docs. 1 at 1 & 1-5 at 5. According to Choate's Director of Operations, Choate does not have any offices, employees, or assets in Alabama and does not regularly engage in business in Alabama or solicit work in Alabama. Doc. 17-1 at 5. It has worked on only six construction projects in Alabama in its 31-year history, with its most recent projects in 2010 and 2012. Doc. 17-1 at 5. Choate maintains that its other "contacts with Alabama have been limited to hiring subcontractors from time to time that happen to be located in

Alabama," but who are contracted for work to be performed outside of Alabama. Doc. 17-1 at 5.

The apartment complex developer was familiar with 3D Air, an Alabama company with its principal place of business in Alabama, and encouraged Choate to obtain a bid from 3D Air for work on the project. Docs. 17-1 at 3–4 & 1 at 2. Choate obtained a bid from and selected 3D Air as the subcontractor for the heating, ventilation and air conditioning ("HVAC") work on the project. Doc. 17-1 at 3–4. The subcontract with 3D Air was negotiated in Georgia, controlled by Georgia law, and required arbitration of disputes in Atlanta, Georgia. Doc. 17-1 at 4. The contract required 3D Air to procure insurance from a carrier authorized to do business in North Carolina and to name Choate as an additional insured. Doc 17-1 at 4. And the subcontract dictated many specific terms with respect to the insurance procured, including but not limited to:

- the Best's rating of the insurer;
- that the coverage forms must be acceptable to Choate;
- to whom coverage must be afforded under the policy;
- the duration of the coverage;
- the limits of the coverage both primary and excess;
- the inclusion of completed operations coverage;
- how the aggregate limits must be applied to the project;
- the precise Commercial General Liability Coverage Form required;
- a limitation of exclusions permitted;
- that Choate and its officers, directors and employees and the project owner must be included as additional insureds under both the primary and excess policies for both ongoing and completed operations;

- the particular ISO Additional Insured Endorsements to be attached to the Alabama policy;
- that the coverage afforded to Choate by its required ISO Additional Insured Endorsement be primary, non-contributing coverage for Choate;
- the amount of the deductible or self-insured retention allowed;
- waiver of the insurer's subrogation rights; and
- the substance of the cancellation provisions.

Doc. 17-1 at 20–22.  Choate was not involved in selecting the insurance carrier and maintains that it did not negotiate the terms of the policy or pay any of the premiums. Doc. 17-1 at 4.

On March 16, 2018, the apartment developer's assignee filed a complaint in North Carolina state court against Choate and others alleging defects in the construction, design, and workmanship, including the HVAC system installed by 3D Air. Doc. 1 at 3; Doc. 1-5 at 8 & 19–23; Doc. 1-15.  Plaintiffs asserted claims against Choate for breach of warranty and for conspiring to conceal defects in the HVAC system. Doc. 1-5 at 5, 28–29 & 36.  The state court ordered Plaintiffs' claims against Choate to arbitration, and the parties presently are conducting discovery. Doc. 17-1 at 6.  Penn National is defending Choate in the underlying lawsuit under a reservation of rights. Doc. 1 at 5.  In its complaint in this court, Penn National seeks a determination of whether it has a duty to defend or indemnify Choate in the underlying lawsuit. Doc. 1 at 10.

## II.  DISCUSSION

A.  **Personal Jurisdiction**

"A federal court sitting in diversity may exercise personal jurisdiction [over a nonresident defendant] to the extent authorized by the law of the state in which it sits and to the extent allowed under the Constitution." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002).  Under its long-arm statute, "Alabama permits its courts to exercise jurisdiction over nonresidents to the fullest extent allowed under the Due Process Clause of the Fourteenth Amendment to the Constitution." *Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1355–56 (11th Cir. 2000) (citing *Martin v. Robbins*, 628 So. 2d 614, 617 (Ala. 1993)).  The Due Process Clause allows for two types of personal jurisdiction: "general" and "specific" personal jurisdiction. *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017) (citing *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  For either general or specific jurisdiction to comport with due process, the defendant must have certain minimum contacts with the state, and the "minimum contacts inquiry focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018) (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)).  "This inquiry ensures that a defendant is haled into court in a forum state based on the defendant's own affiliation with the state, rather than

6

the random, fortuitous, or attenuated contacts it makes by interacting with other persons affiliated with the state." *Id*. (citations and quotation marks omitted).

General jurisdiction may be asserted over a nonresident defendant whose "affiliations with the State are 'so continuous and systematic' as to render [it] essentially at home" there, even where the lawsuit neither arises out of nor relates to the defendant's contacts with the state. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear*, 564 U.S. at 919). Personal jurisdiction is allowed in those limited situations because the "foreign corporation's continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Id*. at 127 (alterations in original) (quotation marks and citation omitted). The minimum contacts test for establishing general jurisdiction over a foreign corporation is a high bar, and "even regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales." *Goodyear*, 564 U.S. at 930 n.6.

Specific jurisdiction, however, is present only if an action "aris[es] out of or relat[es] to the defendant's contact with the forum." *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780. In the Eleventh Circuit, courts apply a three-part test to determine whether exercising jurisdiction over a nonresident defendant comports with due process. *Waite*, 901 F.3d at 1313 (citing *Louis Vuitton Malletier, S.A. v. Mosseri*,

7

736 F.3d 1339, 1355 (11th Cir. 2013)). First, the court must determine whether the plaintiffs "claims 'arise out of or relate to' at least one of the defendant's contacts with the forum." *Id*. Second, the court must decide whether the defendant has "'purposefully availed' itself of the privilege of conducting activities within the forum State." *Id*. Third, "[i]f the plaintiffs carry their burden of establishing the first two prongs," the court must decide "whether the defendant has 'ma[de] a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice.'" *Id*. (second alteration in original).

**B.     Jurisdictional Discovery**

It is well accepted that a qualified right to jurisdictional discovery exists. *See, e.g., Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 729–31 (11th Cir. 1982). Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Fed. R. Civ. P. 26(b)(1). Discovery is not limited to the merits of a case, as it is available to ascertain the facts bearing on issues such as jurisdiction or venue. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978). Thus, "[a] plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery, lest the defendant defeat the jurisdiction of a federal court by withholding information on its contacts with the forum." *Diamond*

8

*Chem. Co. v. Atofina Chems., Inc.*, 268 F.Supp.2d 1, 15 (D.C. Cir. 2003) (citation omitted).

A district court's exercise of the power to order jurisdictional discovery "is not entirely discretionary." *RMS Titanic, Inc. v. Kingsmen Creatives, Ltd.*, 579 F. App'x 779, 790 (11th Cir. 2014) (quoting *Eaton*, 692 F.2d at 729). "[F]ederal courts should order limited jurisdictional discovery where the information the plaintiff seeks, if it exists, would give rise to jurisdiction." *Id.* For example, as the Eleventh Circuit explained in *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997), the "[r]esolution of a pretrial motion that turns on findings of fact—for example, a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2)—may require some limited discovery before a meaningful ruling can be made." *See also Eaton*, 692 F.2d at 730–31 (reversing the district court's dismissal for lack of jurisdiction where, among other things, the information the plaintiff sought could have given rise to jurisdiction).

Penn National seeks discovery as to whether the court has general or specific jurisdiction over Choate. Penn National contends that a controversy exists as to both Choate's specific contacts and its systematic and continuous contacts with Alabama. Doc. 25. For the following reasons, the court agrees with Penn National as to specific contacts, but not as to general contacts.

### *1.     Discovery as to General Jurisdiction*

As for general jurisdiction, the court finds that there are not enough questions before the court to warrant discovery. The evidence before the court establishes that Choate's contacts with Alabama are neither "continuous" nor "systematic." Instead, Croswell Brim's declaration shows that Choate is at home in Georgia: it is incorporated under Georgia law with its principal place of business in Georgia. Doc. 17-1 at 2–3. Choate does not have any offices or employees in Alabama, nor does it maintain any bank accounts in Alabama. Doc. 17-1 at 5. Choate does not regularly solicit work in Alabama, has only done six projects in Alabama in 31 years, and has not engaged in construction activities in Alabama since 2012. Doc. 17-1 at 5.

Penn National argues that it should be able to conduct discovery into the documents supporting these facts, as well as to "the accuracy and veracity of . . . [the] declaration on the scope of the work performed by Choate in Alabama" as to "what [Choate] considers 'regular' solicitation in the State of Alabama [and] the frequency with which Choate retains Alabama subcontractors to perform its work." Doc. 27 at 7. The court disagrees for two reasons. First, Penn National has not provided the court with any evidence to suggest that the declaration, made by Choate's Director of Operations under the penalty of perjury, does not accurately reflect Choate's lack of general contacts with the State of Alabama. Second, discovery as to the possibility of the additional contacts suggested by Penn National

appears to be futile.  The Supreme Court has warned that "the general jurisdiction inquiry does not focu[s] solely on the magnitude of the defendant's in-state contacts. General jurisdiction instead calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide." *Daimler*, 571 U.S. at 139 n.20 (internal quotation marks and citation omitted).  Even if discovery revealed some measure of additional contacts, as contemplated by Penn National, the court has been given no basis for concluding that those contacts would be sufficient to show that Choate's connections with Alabama "are 'so continuous and systematic' as to render [it] essentially at home" in Alabama. *Id*. at 127.

    2.    ***Discovery as to Specific Jurisdiction***

As for specific jurisdiction, however, the court finds there are enough questions to warrant limited jurisdictional discovery.  Penn National seeks the following with regard to specific jurisdiction: (1) communications between Choate and 3D Air regarding the solicitation of the bid and the negotiation and execution of the subcontract; (2) Choate's role in dictating the insurance requirements to 3D Air, Choate's knowledge of the issuance and delivery of the Penn National policy to 3D Air, and communications surrounding the issuance and transmittal of the Certificates of Liability Insurance from the Alabama insurance agency to Choate; and (3) documentation generated in Alabama or sent by Choate to Alabama related to

the project. Doc. 34 at 8–14. The court agrees that all three categories of discovery are relevant to the issue of specific jurisdiction.

As to the first category, Choate admits that it solicited a bid from 3D Air, but has not volunteered any details about that solicitation. This information is relevant to the inquiry of specific jurisdiction. Penn National may explore the extent to which Choate "'purposefully availed' itself of the privilege of conducting activities within" Alabama by soliciting a bid from, and ultimately selecting, an Alabama company. *Waite*, 901 F.3d at 1313 (citation omitted). Likewise, Penn National is entitled to discovery on Choate's involvement and direction as it relates to the insurance policy required by the subcontract. While Choate maintains that it was not involved in the selection of or negotiations with the insurance agency, the subcontract contains specific instructions related to the required insurance policy. Penn National is entitled to inquire regarding the direction provided by Choate as it relates to the insurance policy. As to the final category, the court agrees that general communications between Choate and 3D are relevant to the issue of specific jurisdiction in the same way that the solicitation and bidding process is relevant to whether Choate "'purposefully availed' itself of the privilege of conducting activities within" Alabama.[2] *Id*.

---

[2] Much of Choate's argument centers on cases where courts found that certain evidence was insufficient to establish specific jurisdiction. Doc. 32 at 7–14. These cases are inapposite at this

All that being said, the scope of the discovery sought by Penn National is overbroad. All of the permitted discovery can be accomplished through written discovery, including both interrogatories and requests for production, directed to Choate. Penn National has not established a need for propounding written discovery to 3D where the relevant inquiry focuses on Choate's specific contacts with Alabama pertaining to the project. Depositions will not be permitted. Similarly, the court finds that Penn National has not shown the necessity of a third-party subpoena to the Alabama insurance agency for "jurisdictional discovery as to the communications surrounding the issuance and transmittal of the Certificates of Liability Insurance from the Alabama insurance agency to Choate to establish Choate's knowledge of the issuance and delivery of the Policy in Alabama." Doc. 34 at 12. Penn National may acquire this information from Choate and without a third-party subpoena.

## III. CONCLUSION

For these reasons, it is ORDERED that Penn National's Motion for Leave to Conduct Jurisdictional Discovery as to the Personal Jurisdiction Over Choate Construction Company (Doc. 25) is GRANTED in part and DENIED in part. The motion for jurisdictional discovery (Doc. 25) is GRANTED to the extent that Penn

---

juncture because the issue of jurisdiction is not before it at this time. Instead, the court first must determine whether the evidence sought would aid the court in deciding this ultimate issue. That the court deems the evidence relevant does not mean that the court deems it sufficient to establish jurisdiction.

National may propound interrogatories and requests for production to Choate on the topics related to specific jurisdiction only, as discussed above. Such discovery shall be served on Choate no later than **June 19, 2020,** and Choate shall serve its responses no later than **July 3, 2020**. The motion is DENIED to the extent it seeks authorization for written discovery to 3D Air, depositions, and a non-party subpoena.

It is further ORDERED that Defendant Choate Construction Company's Motion to Strike Certain of Plaintiff's Briefs and to Stay Further Briefing on Choate's Pending Motions (Doc. 36) is DENIED.

With the benefit of jurisdictional discovery, it is ORDERED that Penn National shall file its response to Choate's motion to dismiss on or before **July 17, 2020,** and Choate shall file its reply on or before **July 24, 2020.**

DONE and ORDERED on June 12, 2020.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE