FILED

2020 Nov-17  AM 11:21
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE CO., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 2:20-cv-43-GMB |
| 3D AIR SERVICES, INC., and CHOATE CONSTRUCTION COMPANY, | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

Before the court is the complaint filed by Plaintiff Pennsylvania National Mutual Casualty Insurance Company ("Penn National") seeking a declaratory judgment regarding its obligations to Defendants 3D Air Services, Inc. ("3D Air") and Choate Construction Company ("Choate") under a Commercial General Liability Policy and a Commercial Umbrella Policy. Doc. 1.  In response to the complaint, both Choate and 3D Air filed motions to dismiss for lack of jurisdiction. Docs. 15 & 22.  Choate's motion contends that the court lacks personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), and that the lawsuit is premature and the issues of law and fact are not ripe for the court's consideration under Federal Rule of Civil Procedure 12(b)(1). Doc. 15.  3D Air's motion similarly contends that

the court lacks subject matter jurisdiction under Rule 12(b)(1), that Penn National does not have standing to assert this action against it, and that the lawsuit is premature. Doc. 22.  Pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of a United States Magistrate Judge. Doc. 31.

## I.  STANDARD OF REVIEW

The motions to dismiss implicate Federal Rules of Civil Procedure 12(b)(1) and 12(b)(2). Docs. 15 & 22.  The primary focus of Choate's motion is Rule 12(b)(2). Doc. 15.  Rule 12(b)(2) motions test the court's personal jurisdiction over a defendant. "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a *prima facie* case of jurisdiction." *United Tech. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009) (citing *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir. 1999)).  Where, as here, the defendant challenges jurisdiction by submitting affidavit evidence in support of its position, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002).  When the issue of personal jurisdiction is decided on the evidence, but without a discretionary hearing, a plaintiff demonstrates a *prima facie* case of personal jurisdiction by submitting evidence sufficient to defeat a motion made pursuant to Federal Rule of Civil Procedure 50(a). *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1317 (11th Cir. 2006).

2

At this evidentiary juncture, the court construes the allegations in the complaint as true if they are uncontroverted by affidavits or deposition testimony, *id.* at 1317, and where there are conflicts, the court "construe[s] all reasonable inferences in favor of the plaintiff." *Whitney Info. Network, Inc. v. Xcentric Ventures*, LLC, 199 F. App'x 738, 741 (11th Cir. 2006) (quoting *Meier*, 288 F.3d at 1269).

The motions also invoke the court's subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Docs. 15 & 22. Subject matter jurisdiction is the statutorily conferred power of the court to hear a class of cases. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 503 (2006). Motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) take two forms: "facial attacks" and "factual attacks." *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990). "Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motion. Factual attacks challenge subject matter jurisdiction in fact, irrespective of the pleadings. In resolving a factual attack, the district court may consider extrinsic evidence such as testimony and affidavits." *Morrison v. Amway Corp.,* 323 F.3d 920, 925 n.5 (11th Cir. 2003).

### III.  FACTUAL BACKGROUND

This lawsuit concerns insurance coverage for claims alleging defects in the construction of a student apartment complex in Charlotte, North Carolina. Doc. 1-5

3

at 4.  Choate, a Georgia corporation with its principal place of business in Georgia, served as the general contractor for the complex. Docs. 1 at 1 & 1-5 at 5.  According to Choate's Director of Operations, Choate does not have any offices, employees, or assets in Alabama and does not regularly engage in business in Alabama or solicit work in Alabama. Doc. 17-1 at 5.  Even so, Choate is registered and authorized to do business in Alabama (Doc. 35-1) and has worked on six construction projects in Alabama during its 31-year history as a business, with its most recent projects in 2010 and 2012. Doc. 17-1 at 5.  Choate maintains that its other "contacts with Alabama have been limited to hiring subcontractors from time to time that happen to be located in Alabama," but who are contracted for work to be performed outside of Alabama. Doc. 17-1 at 5.

## A.  The Subcontract Between Choate and 3D Air

The apartment complex developer was familiar with 3D Air, an Alabama company with its principal place of business in Alabama, and encouraged Choate to obtain a bid from 3D Air for work on the project. Docs. 17-1 at 3–4 & 48-1 at 2. Choate obtained a bid from and selected 3D Air as the subcontractor for the heating, ventilation, and air conditioning ("HVAC") work on the project. Doc. 17-1 at 3–4. There were numerous phone calls, emails, and fax communications between Choate and 3D Air relating to the negotiation of the subcontract. Docs. 48-1 at 2–3, 48-3, 48-4, 48-7 & 48-8.  On Choate's end, the negotiations with 3D Air were all in

Georgia—there were no in-person meetings and no Choate employee set foot in Alabama in connection with the subcontract negotiations. Doc. 53-1 at 7. The subcontract states that Georgia law governs any disputes arising from the contract and requires arbitration of those disputes in Atlanta, Georgia. Doc. 17-1 at 4; Doc. 1-15 at 2 & 26.

The subcontract required 3D Air to procure insurance from a carrier authorized to do business in North Carolina and to name Choate as an additional insured. Doc 17-1 at 4. And the subcontract dictated a number of specific terms with respect to the insurance coverage, including but not limited to:

- the Best's rating of the insurer;
- that the coverage forms must be acceptable to Choate;
- to whom coverage must be afforded under the policy;
- the duration of the coverage;
- the limits of the coverage both primary and excess;
- the inclusion of completed operations coverage;
- how the aggregate limits must be applied to the project;
- the precise Commercial General Liability Coverage Form required;
- a limitation of exclusions permitted;
- that Choate and its officers, directors,7 and employees and the project owner must be included as additional insureds under both the primary and excess policies for both ongoing and completed operations;
- the particular ISO Additional Insured Endorsements to be attached to the Alabama policy;
- that the coverage afforded to Choate by its required ISO Additional Insured Endorsement be primary, non-contributing coverage for Choate;
- the amount of the deductible or self-insured retention allowed;
- waiver of the insurer's subrogation rights; and
- the substance of the cancellation provisions.

Doc. 17-1 at 20–22.  Choate was not involved in selecting the insurance carrier and did not negotiate the terms of the policy or pay any of the premiums. Doc. 17-1 at 4. However,  Choate received the certificates of insurance from an Alabama insurance broker and had multiple communications with the Alabama insurance broker and 3D Air concerning the coverage and the issuance of the certificates of insurance. Docs. 17-1 at 73–75, 48-1 at 4–7, 48-8, 48-9, 48-10, 48-11, 48-12 & 48-13.

## B.     The Underlying Lawsuit

On March 16, 2018, the apartment developer's assignee filed a complaint in North Carolina state court against Choate and others alleging defects in construction, design, and workmanship, including problems with the HVAC system installed by 3D Air ("the underlying lawsuit"). Doc. 1 at 3; Doc. 1-5 at 8 & 19–23; Doc. 1-15. The plaintiffs asserted claims against Choate for breach of warranty and for conspiring to conceal defects in the HVAC system. Doc. 1-5 at 5, 28–29 & 36.  3D Air is not a party in the underlying lawsuit.  The state court ordered the plaintiffs' claims against Choate to arbitration, and the parties have been conducting discovery. Doc. 17-1 at 6.  Penn National is defending Choate in the underlying lawsuit under a reservation of rights. Doc. 1 at 5.  In its complaint in this court, Penn National seeks a determination of whether it has a duty to defend or indemnify Choate in the underlying lawsuit. Doc. 1 at 10 & 23–28.  The complaint does not state a cause of action against 3D Air.

6

# IV.  DISCUSSION

As discussed above, before the court are two motions to dismiss. Docs. 15 & 22.  Although some of the arguments overlap, the court begins with Choate's motion to dismiss and then addresses 3D Air's motion.  For the following reasons, the court finds that both motions are due to be granted.

## A.      Choate's Motion to Dismiss

Choate advances two alternative arguments in favor of dismissal. Doc. 15.  It first contends that this court lacks personal jurisdiction over it. Doc. 15 at 2–4. Second, Choate asserts that—even if jurisdiction exists—the declaratory judgment complaint is due to be dismissed because the claims are not ripe. Doc. 15 at 5–6. Because the court agrees that it lacks personal jurisdiction over Choate, it does not address the ripeness of this dispute.

In a diversity action, the court "undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute, and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *United Techs. Corp.*, 556 F.3d at 1274.  Because Alabama's long-arm statute "permits its courts to exercise jurisdiction over nonresidents to the fullest extent allowed under the Due Process Clause of the Fourteenth Amendment to the Constitution," *Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1355–56 (11th Cir.

7

2000), the court need only consider whether the exercise of jurisdiction satisfies the requirements of due process. *Olivier v. Merritt Dredging Co*., 979 F.2d 827, 830 (11th Cir. 1992). The due process requirements in this context are (1) that the defendant have "certain minimum contacts" with the forum state, and (2) if such minimum contacts exist, that the exercise of jurisdiction over the defendant "'does not offend traditional notions of fair play and substantial justice.'" *Burnham v. Sup. Ct. of Cal.*, 495 U.S. 604, 618 (1990) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "This two-part test embodies the controlling due process principle that a defendant must have 'fair warning' that a particular activity may subject it to the jurisdiction of a foreign sovereign." *Vermeulen v. Renault, U.S.A., Inc*., 985 F.2d 1534, 1545 (11th Cir. 1993).

The Due Process Clause allows for two types of personal jurisdiction: general and specific jurisdiction. *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal., San Francisco City*, 137 S. Ct. 1773, 1780 (2017) (citing *Goodyear Dunlop Tire Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)). For either general or specific jurisdiction to comport with due process, the defendant must have certain minimum contacts with the state, and the "minimum contacts inquiry focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Waite v. All Acquisition Corp*., 901 F.3d 1307, 1312 (11th Cir. 2018) (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). "This inquiry ensures that a defendant is haled into court in a forum state based on

the defendant's own affiliation with the state, rather than the random, fortuitous, or attenuated contacts it makes by interacting with other persons affiliated with the state." *Id*. (citations and quotation marks omitted).

Penn National predicates its argument upon the theory of specific jurisdiction.[1] Doc. 45 at 5–18. "Specific jurisdiction arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint." *Consol. Dev. Corp. v. Sherritt, Inc*., 216 F.3d 1286, 1291 (11th Cir. 2000) (citation omitted). In the Eleventh Circuit, courts apply a three-part test to determine whether exercising jurisdiction over a nonresident defendant comports with due process. *Waite*, 901 F.3d at 1313 (citing *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013)). First, the court must determine whether the plaintiffs "claims 'arise out of or relate to' at least one of the defendant's contacts with the forum." *Id*. Second, the court must decide whether the defendant has "'purposefully availed' itself of the privilege of conducting activities within the forum State." *Id*. Third, "[i]f the plaintiffs carry their burden of establishing the first two prongs," the court

---

[1] Penn National originally asserted that general jurisdiction exists (*see* Doc. 27 at 7), but did not address that argument in its later briefing. The court therefore deems this argument abandoned. And even if it had not been abandoned, the complaint does not establish that Choate's contacts with Alabama amount to the kind of "continuous and systematic" contacts that support general personal jurisdiction. *Bulter v. Beer Across Am*., 83 F. Supp. 2d 1261, 1264 (N.D. Ala. 2000) ("General jurisdiction may be exercised when a defendant's contacts with the forum are sufficiently numerous, purposeful, and continuous, as to render fair an assertion of power over the defendant by the state's courts no matter the nature or extent of the relationship to the forum entailed in the particular litigation . . . ."); *see also Helicopteros Nacionales de Colombia, N.A. v. Hall*, 466 U.S. 408, 414 n.9 (1984).

9

must decide "whether the defendant has 'ma[de] a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice.'" *Id*. (second alteration in original).  Moreover, "it is important to remember that the conduct at issue is that of the defendants.  No plaintiff can establish jurisdiction over a defendant through his own actions." *Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc*., 207 F.3d 1351, 1356 (11th Cir. 2000).

Penn National maintains that Choate has sufficient specific contacts with Alabama to confer personal jurisdiction. Doc. 45 at 3.  The parties focus their arguments on the second factor—the requirement that the contacts involve "some act by which the defendant purposefully avails himself of the privilege of conducting activities with the forum." *Vermeulen*, 985 F.2d at 1546.  Penn National points to three categories of contacts to support its position: (1) the communications between Choate and 3D Air during the negotiation of the subcontract; (2) the communications between Choate, 3D Air, and the Alabama insurance broker regarding insurance coverage; and (3) other various contacts related to the construction project itself. Doc. 45 at 7–18.  Choate maintains that these contacts are insufficient as a matter of law. Doc. 51 at 5–17.  The court agrees.

The seminal Supreme Court decision on specific personal jurisdiction in a contracts case is *Burger King Corporation v. Rudzewicz*, 471 U.S. 462 (1985).  In that case, the Florida-based Burger King Corporation brought a breach-of-contract

suit in federal district court in Florida against a Michigan-based Burger King franchisee. *Id.* at 464 & 468.  The issue before the Supreme Court was whether the Florida federal district court's assertion of specific personal jurisdiction over one of the Michigan franchisees "for the alleged breach of his franchise agreement . . . offend[ed] due process." *Id*. at 478.

The Supreme Court began its analysis of the "purposeful availment" component of the minimum contacts test by emphasizing "the quality and nature of the defendant's activity." *Id*. at 475 (citing *Hansen v. Denckla*, 357 U.S. 235, 253 (1958)).  The Court explained:

> This "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts, or of the "unilateral activity of another party or a third person. . . . Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a "substantial connection" with the forum State. Thus where the defendant "deliberately" has engaged in significant activities within a State, or has created "continuing obligations" between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Id*. at 475–76 (internal citations and footnotes omitted).  Applying these principles, the Court noted that "an individual's contract with an out-of-state party alone can[not] automatically establish sufficient minimum contacts in the other party's home forum." *Id*. at 478.  The Court recognized, however, that a contract is generally

preceded by past negotiations and future relationships, and that "[i]t is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." *Id*. at 479.

Notwithstanding that the Burger King franchisee had "no physical ties to Florida," the Court concluded that the "dispute grew directly out of a contract which had a substantial connection with that State." *Id*. (internal quotation marks omitted). The Court highlighted that the franchisee "deliberately 'reach[ed] out beyond' Michigan and negotiated with a Florida corporation for the purchase of a long-term franchise and the manifold benefits that would derive from affiliation with a nationwide organization." *Id*. at 479–80. The franchise agreement covered a 20-year period and contemplated "continuing and wide-reaching contacts with Burger King in Florida." *Id*. at 480. Additionally, the Court considered the contractual provisions that "Burger King's operations are conducted and supervised from the Miami headquarters, that all relevant notices and payments must be sent there, and that the agreements were made in and enforced from Miami." *Id*. Also relevant, but not dispositive, was the franchise agreement's choice-of-law provision "providing that all disputes would be governed by Florida law." *Id*. at 481 & 482. The Court, therefore, concluded that "[i]n light of [the franchisee's] voluntary acceptance of the

long-term and exacting regulation of his business from Burger King's Miami headquarters, the 'quality and nature' of his relationship to the company in Florida can in no sense be viewed as 'random,' 'fortuitous,' or 'attenuated.'" *Id*.

Viewing the facts presented here through the *Burger King* lens, the subcontract between Choate and 3D Air is not sufficient, standing alone, to subject Choate to personal jurisdiction in an Alabama federal court.   Although Choate reached out to 3D Air to submit a bid, Choate had no physical connection to Alabama in relation to the subcontract.   Choate does not have an office, agent, employee, or property in Alabama and no employee of Choate ever came to Alabama during the subcontract negotiations.[2]  There also is no evidence that the subcontract was formed as the result of a long-standing business relationship or that any future business relationship was contemplated by Choate or 3D Air.   Instead, the subcontract governed a one-time HVAC job in North Carolina.   And, unlike in *Burger King*, the choice-of-law provision in the contract dictates that Georgia law applies and that all disputes would be decided through arbitration in Georgia.

The court also is not persuaded that the pre-contract communications between the parties and the communications between Choate, 3D Air, and the Alabama insurance broker establish personal jurisdiction over Choate.   Numerous courts have

---

[2] That Choate is licensed to do business in Alabama and had occasionally worked in Alabama in the past does not change the court's analysis.   These contacts bear more relevance to the general jurisdiction analysis and do not relate to the subcontract at issue.

found similar evidence to be insufficient. *See, e.g.*, *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 806–07 & 812 (11th Cir. 2010) (finding no jurisdiction over Kentucky company that solicited bid in Florida through "telephonic and other electronic means" to perform work at beach resort in St. Maarten and did not set foot in Florida); *Sea Lift, Inc. v. Refinadora Costarricense de Petroleo, S.A.*, 792 F.2d 989, 993–94 (11th Cir. 1986) (finding no purposeful availment where defendant's representatives personally visited plaintiff in Florida to solicit bid for salvage operation in Costa Rica and sent contract from Costa Rica for plaintiff's signature in Florida); *Johansson Corp. v. Bowness Constr. Co.*, 304 F. Supp. 2d 701, 702-03, 705-07 (D. Md. 2004) (finding no personal jurisdiction over North Carolina contractor who negotiated with Maryland subcontractor at homeowner's direction for project in North Carolina, notwithstanding phone calls and emails, in-person meeting in North Carolina, and plaintiff's signing of the subcontract in Maryland). And the addition of Choate to the insurance policy is not an adequate minimum contact to establish personal jurisdiction. The requirement for the insurance contract was that the carrier had to be authorized to do business in North Carolina, not Alabama. Moreover, 3D Air chose the broker, not Choate. Unilateral acts within a forum state are insufficient to establish personal jurisdiction over a non-resident defendant. *Burger King*, 471 U.S. at 475 ("[U]nilateral activity of those who claim

some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.").

The other actions on which Penn National relies do not tip the scale in favor of personal jurisdiction. *See* Doc. 45 at 16–17.  Many of these alleged contacts were unilateral acts taken by 3D Air to meet its obligations under the subcontract.  For example, Penn National points to the purchases of supplies and equipment from two Alabama vendors, but there is no evidence that Choate played any role in the procurement of those items other than through payment requests and the mailing of payments.  And the making and sending of payments in a forum state "is a secondary or ancillary factor" in the personal jurisdiction equation. *Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc.*, 786 F.2d 1055, 1059 (11th Cir. 1986) (internal quotation marks and citation omitted).  Additionally, the phone calls and emails between the parties during the execution of the subcontract are insufficient to confer jurisdiction.  The vast majority of the emails were sent for the purpose of transmitting information required for the performance of the subcontract, and there is no evidence that any face-to-face meetings ever occurred in Alabama.  Moreover, even with respect to the emails and phone calls, there is no evidence that the employees of 3D Air were located in Alabama when they occurred.

In sum, balancing the factors for and against a finding of purposeful availment, this court is not persuaded that Choate is subject to personal jurisdiction

in Alabama.   Considering the quality, nature, and extent of its contacts with Alabama, Choate's purposeful contacts with Alabama create only an attenuated affiliation with the forum. *See Burger King*, 471 U.S. at 476 n.18.   The court, therefore, finds that Choate's contacts are not such that it would reasonably anticipate being haled into court in Alabama for this dispute.   Because Choate does not have the requisite minimum contacts to support personal jurisdiction, the court does not need to reach the fairness tier of the due process inquiry.   Choate's motion to dismiss for lack of personal jurisdiction is due to be granted.

## B.   3D Air's Motion to Dismiss

3D Air contends that the declaratory judgment complaint against it should be dismissed because the court lacks subject matter jurisdiction and Penn National does not have standing to assert claims against it. Doc. 22 at 1.   There are multiple issues with the complaint as stated against 3D Air.   First, Penn National did not respond to the specific contentions made by 3D Air in its motion to dismiss.   Instead, the brief in opposition to the motions focused solely on Choate's motion to dismiss. Doc. 35. While 3D Air did incorporate the arguments made by Choate in its motion (Doc. 22 at 2), 3D Air's motion sets out a separate and independent basis for dismissal.   "[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed." *Access Now, Inc. v. Sw. Airlines*

*Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004).  For this reason, the court deems any claim against 3D Air abandoned.

Even if Penn National had not abandoned its complaint as stated against 3D Air, there is a more fundamental reason to dismiss the complaint—it does not articulate any requested declaratory relief with respect to the relationship between Penn National and 3D Air.  This deficiency is understandable since 3D Air is not a party to the underlying lawsuit in North Carolina.  Penn National is not defending 3D Air in that suit and there is nothing to indemnify as it relates to 3D Air.  Because no duty has been triggered under the contract between Penn National and 3D Air, there is no "case or controversy" for the court to decide.  A declaratory judgment requires "the settling of some dispute which affects the behavior of the defendant towards the plaintiff." *Rhodes v. Stewart*, 488 U.S. 1, 3–4 (1988); *see also Hewitt v. Helms*, 482 U.S. 755, 761 (1987).  If not for the settling of a dispute, a declaratory judgment would be an improper advisory opinion. *Rhodes*, 488 U.S. at 3–4.  The court finds that any pronouncement on the contract between Penn National and 3D Air would be just that.  Therefore, 3D Air is due to be dismissed from this lawsuit.

### III.  CONCLUSION

For these reasons, it is ORDERED that:

(1)    Choate's Motion to Dismiss (Doc. 15) is GRANTED for lack of personal jurisdiction; and

17

(2)     3D Air's Motion to Dismiss (Doc. 22) is GRANTED for lack of subject

matter jurisdiction

A final order of dismissal will be entered separately.

DONE and ORDERED on November 17, 2020.

_____

GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE